

FILED & ENTERED

MAY 07 2015

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY bakchell  DEPUTY CLERK

**OPINION NOT FOR PUBLICATION**

### UNITED STATES BANKRUPTCY COURT

### CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

| | |
|---|---|
| In re: | Case No. 2:12-bk-16090 RK |
| CATHERINE Z. CASS<br>(Christine Zeman as Administrator of the<br>Estate of Catherine Z. Cass), | Chapter 7 |
| Debtor. | FINDINGS OF FACT AND<br>CONCLUSIONS OF LAW AFTER TRIAL<br>ON CONTESTED MATTERS OF: (1)<br>TRUSTEE'S MOTION FOR ORDER<br>GRANTING SURCHARGE PURSUANT<br>TO 11 U.S.C. §506(c); AND<br>(2) JUDGMENT CREDITORS' MOTION<br>TO DISGORGE FEES |

Pending before the court in the above-captioned bankruptcy case are the

contested matters of:

1.      Trustee's Motion for Order Granting Surcharge Pursuant to 11 U.S.C.

§506(c), filed on June 1, 2010 as Docket No. 177 as revised and supplemented by the

Trustee's Motion for Order Granting Surcharge Pursuant to 11 U.S.C. §506(c), filed on

November 13, 2012 as Docket No. 272 and Trustee's Supplement to Motion for Order

Granting Surcharge Pursuant to 11 U.S.C. §506(c), filed on September 18, 2013 as

Docket No. 331 (collectively, the "Motion to Surcharge"); and

2.      Judgment Creditors' Motion for an Order Compelling the Trustee's

1    Attorneys to Disgorge Money Paid to them as Interim Compensation, filed on January 2,

2    2013 as Docket No. 277 ("Motion to Disgorge").

3        These contested matters were tried before the undersigned United States

4    Bankruptcy Judge on December 19, 2013.  D. Edward Hays, of Marshack Hays LLP

5    ("Marshack Hays"), appeared for Charles W. Daff, Chapter 7 Trustee of the bankruptcy

6    estate of Catherine Z. Cass ("Trustee").  David B. Dimitruk, of the Law Offices of David B.

7    Dimitruk, appeared for Judgment Creditors James Wallace, Rebecca Wallace, and Gloria

8    Suess ("Judgment Creditors").

9        Having considered the undisputed facts and evidence set forth in the Joint Pretrial

10   Order entered by the Court on June 20, 2013 as Docket No. 321, the evidence admitted

11   at trial and the oral and written arguments of the parties, the court makes the following

12   findings of fact and conclusions of law in these contested matters pursuant to Rules 7052

13   and 9014 of the Federal Rules of Bankruptcy Procedure.  Any finding of fact that should

14   be properly characterized as a conclusion of law should be considered as such, and any

15   conclusion of law that should be properly characterized as a finding of fact should be

16   considered as such.

17       **I.    JURISDICTION**

18       The court has jurisdiction over these contested matters pursuant to 28 U.S.C.

19   §§1334(b) and 157.  These contested matters are core proceedings within the meaning

20   of 28 U.S.C. §157(b)(2)(A) and (O).  The court properly has venue over these matters

21   pursuant to 28 U.S.C. §§1408 and 1409.

22       **II.    FINDINGS OF FACT**

23       1.    On April 22, 2004, Catherine Z. Cass ("Debtor" or "Mrs. Cass") was sued for

24   nuisance and injunctive relief in the Superior Court of Orange County, California, Case

25   No. 04CC05117 (the "First Action") by her neighbors, James Wallace, Rebecca Wallace,

26   and Gloria Suess (collectively, "Judgment Creditors").  Joint Pretrial Order ("JPTO"),

27   Undisputed Facts ("UF") ¶ 1; Declaration of D. Edward Hays in Support of Trial re:

28   Surcharge, filed on August 26, 2013 as Docket No. 323 ("Hays Trial Decl."), ¶ 5.

2.      On May 28, 2004, Debtor recorded a Grant Deed with Life Estate ("Grant Deed") which deed named her daughter, Christine Zeman ("Zeman" or "Mrs. Zeman"), as the recipient of a remainder interest in her residence commonly known as 2418 N. Fairmont Avenue, Santa Ana, California 92706 (the "Property").  The Grant Deed is sometimes referred to as the "Transfer."  JPTO UF ¶ 2; Joint Compendium ("JC") Exhibit ("Ex") 102; Hays Trial Decl., ¶ 6.[1]

3.      On or about July 8, 2005, Judgment Creditors through their counsel, David Dimitruk ("Mr. Dimitruk") filed a second state court action against Debtor and Zeman in the Superior Court for the State of California, County of Orange, Case No. 05CC08034 (the "Second Action") seeking judgment, among other determinations and relief, avoiding the Transfer as fraudulent.  JPTO UF ¶ 3; Hays Trial Decl., ¶ 7; Declaration of David B. Dimitruk in Opposition to the Motion by Trustee for an Order to Surcharge the Judgment Lien, Docket No. 326 ("Dimitruk Decl."), ¶ 3.

4.      On October 28, 2005, Judgment Creditors obtained a money judgment against Debtor in the First Action awarding damages in the amount of $320,000 ("Judgment").  JPTO UF ¶ 6; JC, Ex. 3; Dimitruk Decl., ¶ 6.

5.      On November 1, 2005, Judgment Creditors recorded an abstract of the Judgment ("Abstract of Judgment") with the County Recorder's Office for the County of Orange, California.  JPTO UF ¶ 7; Dimitruk Decl., ¶ 6; JC, Ex. 4.

6.      In the Second Action, filed by Judgment Creditors against Mrs. Cass and Zeman, Zeman filed a cross-complaint on March 2, 2006.  JPTO UF ¶ 8; JC, Ex. 5; Dimitruk Decl., ¶ 7.

7.      The Second Action was scheduled to commence trial in the Superior Court on January 8, 2007.  JPTO UF ¶ 9; Dimitruk Decl., ¶ 8.

8.      Judgment Creditors prepared a list of issues for the January 8, 2007 trial in the Second Action.  JPTO UF ¶ 10; JC, Ex. 6; Dimitruk Decl., ¶ 8.

---

[1] All references to "Ex" are to the Exhibits attached to the JC which were admitted into evidence.

9.      Judgment Creditors prepared a trial brief for the January 8, 2007 trial in the Second Action.  JPTO UF ¶ 11; JC, EX. 7; Dimitruk Decl., ¶ 8.

10.      On January 5, 2007, prior to trial in the Second Action, Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code, 11 U.S.C.  JPTO UF ¶ 12; Trustee's Request for Judicial Notice in Support of Trustee's Motion for Order Granting Surcharge Pursuant to 11 U.S.C. Section 506(c) filed on November 13, 2012 as Docket No. 273 ("Trustee's RJN"), ¶ 3, Ex. 3, Court's docket re: Bankruptcy Case Number 2:12-bk-16090-RK, Docket No. 1; JC Ex. 8, Petition.

11.      Charles W. Daff is the duly appointed and acting Chapter 7 Trustee for the Bankruptcy Estate of Catherine Z. Cass ("Trustee").  *Id.*

12.      In her bankruptcy petition, Debtor claimed a homestead exemption of $150,000 in the Property (identified as real property in Orange County, "parcel #003-091-02 – title owned by daughter") on Schedule C to the petition, "Property Claimed as Exempt."  JC Ex. 8, Petition.  On this schedule, Debtor also claimed that the value of the Property was $150,000.  *Id.*  On Schedule A to the petition, "Real Property," Debtor also indicated that the nature of her interest in the Property was "Life Estate."  *Id.*

13.      On March 12, 2007, Trustee retained D. Edward Hays and Cathrine Castaldi of the law firm of Rus, Miliband & Smith, APC ("Rus, Miliband & Smith") to represent him as general counsel.  JPTO UF ¶ 13; Trustee's RJN, ¶ 3, Ex. 3, Court's docket re: Bankruptcy Case Number 2:12-bk-16090-RK, Docket No. 33, Application of Chapter 7 Trustee to Employ General Counsel (Rus, Miliband & Smith, A Professional Corporation); Declaration of D. Edward Hays in support of Trustee's surcharge motion, filed as Docket No. 272 ("Hays Decl."), ¶ 3; Declaration of D. Edward Hays in Support of Trial Re: Surcharge filed on August 26, 2013 as Docket No. 323 ("Hays Trial Decl."), ¶ 3.

14.      On June 22, 2007, the court entered an Order granting Trustee's application to employ Rus, Miliband & Smith.  JPTO UF ¶ 13; Trustee's RJN, ¶ 3, Ex. 3; Docket No. 87, Order Granting Chapter 7 Trustee's Application to Employ General Counsel (Rus, Miliband & Smith, A Professional Corporation).

1    15.    On January 25, 2007, counsel for Judgment Creditors, Mr. Dimitruk, sent a

2  facsimile transmission to Trustee, Mr. Daff, enclosing a copy of a letter agreement

3  between Debtor and Zeman.  JPTO UF ¶ 14; JC, Ex. 9; Dimitruk Decl., ¶ 1.

4    16.    On January 30, 2007, the Office of the United States Trustee filed a motion

5  to dismiss Debtor's case because she failed to complete credit counseling prior to filing

6  bankruptcy (the "Motion to Dismiss").  JPTO UF ¶ 15; JC, Ex. 11; Trustee's RJN, ¶ 3, Ex.

7  3; Docket No. 12; Hays Trial Decl., ¶ 12.

8    17.    The Motion to Dismiss was opposed by Debtor and Trustee.  JPTO UF ¶

9  16; Trustee's RJN, ¶ 3, Ex. 3; Docket No. 25, Debtor's Objection to Trustee's Motion to

10  Dismiss Case.

11    18.    Judgment Creditors filed a response to the Motion to Dismiss.  JPTO UF ¶

12  17; Trustee's RJN, ¶ 1, Ex. 1 and ¶ 3, Ex. 3; Docket No. 27, Response to Motion to

13  Dismiss by Creditors James Wallace, Rebecca Wallace and Gloria Suess, JC Ex. 12.

14    19.    In their response to the Motion to Dismiss, Judgment Creditors requested

15  alternative relief as follows: "A. The Creditors ask this court to consider denying the

16  motion because of the abuses by Catherine Cass of the judicial system so that her

17  property may be sold by the Chapter 7 Trustee; B. Alternatively, the Creditors request

18  that if the Court dismisses the petition, it issue a bar against Catherine Cass from filing

19  any further petitions in bankruptcy for the maximum time the court may restrain her

20  . . ."  Docket No. 27 at 2, JC Ex. 12 at 2.

21    20.    On March 7, 2007, the Office of the United States Trustee filed a notice of

22  withdrawal of its Motion to Dismiss.  JPTO UF ¶ 18; Trustee's RJN, ¶ 3, Ex. 3; Docket

23  No. 29, Notice of Withdrawal of United States Trustee's Motion to Dismiss Case Under

24  11 U.S.C. §109(h)(1) of the Bankruptcy Code.

25    21.    On March 14, 2007, Debtor filed a document entitled "Request for Court's

26  Reconsideration of Ruling on March 13, 2007 Regarding Replacement of Trustee

27  Charles Daff" ("Motion to Reconsider").  JPTO UF ¶ 80; Trustee's RJN, ¶ 3, Ex. 3;  Hays

28  Trial Decl., ¶ 68(c);  Docket No. 32, Request for Court's Reconsideration of Ruling on

1    Mar. 13, 2017 Regarding Replacement of Trustee Charles Daff.  On March 29, 2007,

2    Trustee filed an Opposition to Motion to Reconsider.  Docket No. 39, Opposition to

3    Debtor's Request for Court's Reconsideration of Ruling on March 13, 2007 re

4    Replacement of Trustee Charles Daff; Hays Trial Decl., ¶ 68(d).

5        22.    On March 16, 2007, Mr. Dimitruk spoke to Trustee's counsel, D. Edward

6    Hays ("Mr. Hays"), for the first time in this case regarding several matters including the

7    facts in support of the Second Action which included the fraudulent transfer cause of

8    action against Zeman, and the Judgment obtained against Debtor in the First Action.

9    JPTO UF ¶ 81; Dimitruk Decl. ¶ 20; Hays Trial Decl. ¶ 16.

10        23.    In the March 16, 2007 conversation, Mr. Hays asserted that only Trustee

11    had the standing and the right to prosecute the state court action.  *Id.*  Mr. Hays also said

12    that Trustee was considering the removal of the Second Action to the Bankruptcy Court.

13    *Id.*

14        24.    On March 20, 2007, Debtor filed a request for voluntary dismissal of her

15    bankruptcy case.  JPTO UF ¶ 19;  Trustee's RJN, ¶ 3, Ex. 3; Docket No. 45, Opposition

16    to Debtor's Request for Voluntary Dismissal (the motion was "lodged" by Debtor but

17    never filed and therefore does not appear on the docket; Docket No. 45 is Trustee's

18    opposition to the motion and contains an explanation of the situation at 1 n. 1).

19        25.    On April 2, 2007, Mr. Hays sent an e-mail message to Mr. Dimitruk.  JPTO

20    UF ¶ 82; JC Ex. 14; Hays Trial Decl., ¶ 18.  The email message stated:

21              Today, I received an electronic notice that you filed the
               attached adversary complaint [8:07-ap-1099-RK which
22              included a claim for relief to deny the Debtor's discharge
               pursuant to 11 U.S.C. §727].  The second claim for relief
23              requests that the Court determine that your clients have a lien
               or interest in the Cass property superior to any interests held
24              by the Debtor and/or her daughter.  The second claim for
               relief does not request that the Court make any determination
25              with regard to the relative rights between your clients and the
               estate.  **Please reply to confirm** that your clients will neither
26              assert any right nor seek entry of any judgment or order that
               purports to bind the estate as the Trustee is not a named-
27              party to this action.

28              As you know from our prior discussions, the Trustee contends

6

1
2
3
that the estate's rights in the Property, the claims to avoid and recover the alleged fraudulent transfer made by Debtor and any rights arising from the lis pendens recorded by your clients are superior to that of creditors, including your clients.

Thanks.

4
5
Emphasis in original.

6          26.    On April 10, 2007, Trustee filed an opposition to Debtor's Voluntary

7   Request for Dismissal.  JPTO UF ¶ 20; Trustee's RJN, ¶ 3, Ex. 3, Docket No. 45,

8   Opposition to Debtor's Request for Voluntary Dismissal, JC Ex. 17.

9          27.    On April 10, 2007, Judgment Creditors filed a response to Debtor's request

10  for voluntary dismissal.  JPTO UF ¶ 21 (the JPTO mistakenly says the response was filed

11  on April 12, 2007); Trustee's RJN, ¶ 3, Ex. 3, Docket No. 46, Memorandum of Points and

12  Authorities in Response to the Motion by Catherine Cass to Dismiss Her Petition, JC Ex.

13  18.

14         28.    In their response to Debtor's request for voluntary dismissal, Judgment

15  Creditors stated that the court should "deny the motion and require the Debtor to require

16  that the property be re-transferred to the Debtor."  Judgment Creditors alternatively

17  requested that "if the Court is inclined to grant the Motion, to first require as a condition of

18  dismissal that the property be re-transferred to the Debtor by recording of an

19  unconditional transfer of title to the property to the Debtor and in any event, issue an

20  injunction against the Debtor from re-filing any further bankruptcy petitions either

21  permanently, for a five-year period, or at least the 180 days, or such other period as the

22  Court considers to be appropriate."  JPTO UF ¶ 21; JC Ex. 18 at 1:27-2:4.

23         29.    On April 5, 2007, Trustee substituted into the Second Action as the real

24  party-in-interest and removed that case to the United States Bankruptcy Court for the

25  Central District of California, which action was assigned Adversary Case No. 8:07-ap-

26  1099-RK (the "Fraudulent Transfer Adversary Proceeding").  JPTO UF ¶ 22; Trustee's

27  RJN, ¶ 3, Ex. 3, Docket No. 44, Notice of Removal of State Court Action to Federal

28  Bankruptcy Court (Orange County Superior Court Case No. 05CC08034); Hays Trial

1  Decl., ¶ 19.

2        30.    On April 17, 2007, Debtor filed a Notice of and: 1. Objection to and Motion

3  to Disallow Pleadings of D.E. Hays; 2. Objection to and Motion to Disallow Pleading of D.

4  Dimitruk; 3. Reaffirmation of Debtor's Voluntary Dismissal Request; 4. Denial of

5  Fraudulent Transfer; 5. Recapitulation; 6. Request for Sanctions.  Docket No. 48; Hays

6  Trial Decl. ¶ 68(e).

7        31.    On April 24, 2007, Trustee filed the Declaration of D. Edward Hays

8  Requesting Entry of Order Denying Debtor's Request for Court's Reconsideration of

9  Ruling on March 13, 2007 re Replacement of Trustee Charles W. Daff.  Docket No. 49;

10  Hays Trial Decl. ¶ 68(f).

11        32.    On April 26, 2007, the court entered the Order Denying Debtor's Request

12  for Court's Reconsideration of Ruling on March 13, 2007 re Replacement of Trustee

13  Charles W. Daff.  Docket No. 50; Hays Trial Decl. ¶ 68(g).

14        33.    On April 26, 2007, Debtor filed the Objection to D. Edward Hays's Request

15  that the Court to Deny Debtor's Request for Reconsideration of Retaining Trustee Daff.

16  Docket No. 52; Hays Trial Decl. ¶ 68(h).

17        34.    On May 8, 2007, Trustee filed a document in this court entitled, "Request

18  for Judicial Notice re Documents Filed in Orange County Superior Court Case No.

19  05CC08034."  Docket No. 54; JPTO UF ¶ 23; JC Ex. 19; Dimitruk Decl. ¶ 26.

20        35.    Attached to the May 7, 2007 Request for Judicial Notice was a copy of the

21  state court complaint filed in the Second Action.  Docket No. 54, RJN, Ex. 1.  Also

22  attached to the May 7, 2007 Request for Judicial Notice was a copy of Christine Zeman's

23  First Amended Cross-Complaint filed in the Second Action.  Docket No. 54, RJN, Ex. 7.

24        36.    On May 10, 2007, Mr. Dimitruk sent Mr. Hays an email message discussing

25  his thoughts on a stipulation to avoid, recover, and preserve Debtor's transfer of the

26  property to Zeman for the benefit of the Estate (the "May 10, 2007 Email").  In this email,

27  Mr. Dimitruk asked for Mr. Hays's thoughts on the "homestead" and "Mrs. Cass's claim to

28  a life estate."  Hays Trial Decl., ¶ 20; JC Ex. 92 at 02353.

37.    The May 10, 2007 email message is part of an email chain in which Mr.
Dimitruk and Mr. Hays discussed how best to avoid the transfer to Zeman and ensure
that Debtor did not receive a homestead exemption in the Property upon avoidance and
recovery.  *Id.*

38.    On May 11, 2007, Trustee filed an objection to Debtor's claimed $150,000
homestead exemption.  JPTO UF ¶ 39; JC Ex. 23; Hays Trial Decl. ¶ 21; Trustee's RJN ¶
3, Ex. 3; Docket No. 61, Trustee's Objections to Debtor's Claimed Exemptions.

39.    On May 23, 2007, the court entered an Order to Show Cause as to why the
bankruptcy case should not be dismissed based on Debtor's failure to obtain credit
counseling prior to bankruptcy ("OSC re Dismissal").  JPTO UF ¶ 24 (the JPTO
incorrectly states that the order was entered on May 24, 2007); Trustee's RJN ¶ 3, Ex. 3,
Docket No. 70, Order to Show Cause Why This Case Should Not Be Dismissed for
Debtor's Failure to Obtain Budget and Credit Counseling During the 180-Day Period
Preceding the Petition Date or Submit Certification Establishing Exigent Circumstances;
Hays Trial Decl., ¶ 22.

40.    On June 20, 2007, Trustee, Judgment Creditors and Zeman, through their
respective counsel, entered into the Stipulation for Entry of Judgment Avoiding and
Recovering Transfer of Real Property (the "Stipulation").  JPTO UF ¶ 26;  JC Ex. 42;
Trustee's RJN ¶ 2, Ex. 2, Stipulation for Entry of Judgment Avoiding and Recovering
Transfer of Real Property and Order Thereon, filed on May 28, 2008 in Adversary Case
No. 8:07-ap-01099-RK; Hays Trial Decl., ¶¶ 24 and 25.

41.    On July 3, 2007, the court deferred ruling on Debtor's request for voluntary
dismissal and its OSC re Dismissal.  JPTO UF ¶ 27; Trustee's RJN, Ex. 3 at 3, Court's
docket re: Bankruptcy Case Number 2:12-bk-16090-RK, entries between Docket Nos. 84
and 88.  In the interim, the court entered an Order re Suspension of Proceedings pending
resolution of Debtor's state court appeal of the Judgment entered against her and in favor
of Judgment Creditors.  JPTO UF ¶ 27; Trustee's RJN, Ex. 3 at 3, Court's docket re:
Bankruptcy Case Number 2:12-bk-16090-RK; Docket No. 88, Order re Suspension of All

1    Proceedings.  The dismissal hearings were continued from time to time pending

2    resolution of the appeal.  *Id*.; see Docket entries on November 27, 2007, February 26,

3    2008, April 8, 2008, May 27, 2008, and July 8, 2008.

4        42.    On July 13, 2007, Trustee filed the Notice of Motion (1) for Leave to File

5    Motion to Abandon Appellate Claims to Debtor; and (2) to Abandon Appellate Claims to

6    Debtor.  Hays Trial Decl., ¶ 68(k); Docket No. 93, Notice of Trustee's Motion (1) for Leave

7    to File Motion to Abandon Appellate Claims to Debtor; and (2) to Abandon Appellate

8    Claims to Debtor.

9        43.    On July 18, 2007, Trustee filed the Motion (1) for Leave to File Motion to

10   Abandon Appellate Claims to Debtor; and (2) to Abandon Appellate Claims to Debtor;

11   Memorandum of Points and Authorities; Declaration of Charles W. Daff.  Hays Trial Decl.,

12   ¶ 68(l); Docket No. 94, Trustee's Motion (1) for Leave to File Motion to Abandon

13   Appellate Claims to Debtor; and (2) to Abandon Appellate Claims to Debtor.

14       44.    On July 19, 2007, Trustee filed the Opposition to Debtor's Objection to

15   Court's Orders: (1) the Law Firm of Rus, Miliband & Smith Can Be Counsel for Trustee

16   Charles Daff (2) Disallowing Debtor's Counterclaim in Adversary Case No. 0099 RK and

17   (3) Disallowing Debtor's Counterclaim in Adversary Case 0094 RK Request for

18   Reconsideration and Request for Leave of Court to File Opposition.  Hays Trial Decl., ¶

19   68(m); Docket No. 98, Opposition to Debtor's Objection to Court's Orders: (1) the Law

20   Firm of Rus, Miliband & Smith Can be Counsel for Trustee Charles Daff (2) Disallowing

21   Debtor's Counterclaim in Adversary Case No. 0099 RK and (3) Disallowing Debtor's

22   Counterclaim in Adversary Case 0094 RK Request for Reconsideration and Request for

23   Leave of Court to File Opposition.

24       45.    On August 15, 2007, the court entered the Order Granting Trustee's Motion

25   (1) For Leave To File Motion To Abandon Appellate Claims to Debtor; and (2) To

26   Abandon Appellate Claims to Debtor.  Hays Trial Decl., ¶ 68(n); Docket No. 108, Order

27   Granting Trustee's Motion (1) For Leave To File Motion To Abandon Appellate Claims to

28   Debtor; and (2) To Abandon Appellate Claims to Debtor.

46.    On November 20, 2007, Trustee filed the Status Report re Appeal and Request for Continuance of Review Hearing for 90 Days.  Hays Trial Decl., ¶ 68(o); Docket No. 112, Status Report re Appeal and Request for Continuance of Review Hearing for 90 Days.

47.    On May 29, 2008, after the Judgment was affirmed by the California Court of Appeal, the court entered a Judgment (the "Avoidance Judgment") pursuant to the Stipulation in the Fraudulent Transfer Adversary Proceeding.   Judgment Creditors executed the Stipulation along with Trustee and Zeman.  JPTO UF ¶¶ 27 and 28; JC Ex. 42 and 43; Hays Trial Decl., ¶ 25.

48.    Debtor appealed entry of the Avoidance Judgment.  JPTO UF ¶ 29; Hays Trial Decl., ¶ 26.

49.    On August 5, 2008, Judgment Creditors filed a brief detailing their position regarding dismissal of the bankruptcy case in which they stated:

> This memorandum is divided into two principal sections, which turn on whether this Court dismisses Mrs. Cass's bankruptcy petition or not. . . .

JPTO UF ¶ 25; JC Ex. 44, Positions by James Wallace, Rebecca Wallace, and Gloria Suess; Declaration of David B. Dimitruk in Support Thereof at 1:27-2:1.

> On March 20, 2007, Catherine Cass filed a motion to dismiss her own bankruptcy petition and, because of this Court's June 28, 2007 Order (see paragraph 3 below), no ruling has been made on her motion. The Creditors' primary position on April 10, 2007, when they filed their response to the motion, was that the court should deny the request because Christine Zeman had not yet agreed to retransfer the residence in which Mrs. Cass resides to Mrs. Cass. . . .

Id. at 2:7-11.

> The Creditors now favor a dismissal upon certain conditions and for the following reasons. . . .

Id. at 2:18.

> The Creditors will benefit from a dismissal because a dismissal will avoid the numerous delays and predictable litigation expenses that they have sustained by virtue of the

various positions that Mrs. Cass has taken in this court. A dismissal will entitle them to obtain an order from the state court to sell the residence so that the judgment may be satisfied. Denying the motion to dismiss subjects the Creditors to further delays and expenses that are not likely to be sustained by the streamlined procedures available in the state court proceeding for the sale of property. The Creditors will be prejudiced, however, if the court does not also issue an injunction and order the trustee to restore title to the Residence to Mrs. Cass as conditions of the dismissal. . . .

*Id.* at 8:19-27.

Should the court dismiss this bankruptcy action, the court should also issue a permanent injunction against Mrs. Cass from filing any further bankruptcy actions. . . . . If the court is unwilling to permanently enjoin Mrs. Cass from filing any bankruptcy petition it should then issue a five-year injunction because the six-month injunction under 11 U.S.C. section 109 is insufficient to prevent Mrs. Cass from causing further delay

. . . .

*Id.* at 9:3-8.

For a dismissal of the bankruptcy petition to become effective, the court must also (1) require the trustee to execute such documents as may be necessary to restore actual title to the Residence in the name of Catherine Cass (i.e., it may also be necessary to cause a certified copy of the Separate Judgment to be recorded in the Orange County Recorder's Office in order to effectuate such a transfer), and (2) remand the second lawsuit to the Orange County Superior Court, which the trustee removed to this court. . .

*Id.* at 9:12-17.

In the event that this Court does not dismiss the bankruptcy case, the Creditors contend that certain determinations must follow the retention of the case as illustrated below. These determinations are dependent on the outcome of the pending appeal before the Bankruptcy Appellate Panel and, therefore, these determinations must also await the ruling from the Bankruptcy Appellate Panel. . . .

Essentially, this Court should (1) vacate its June 28, 2007 Order, which stays all other proceedings in the case, (2) set a time for the filing of proof of claims, (3) require the recordation of the Stipulated Judgment in the Orange County Recorder's Office, (4) require the trustee to sell the residence, and (5) set the pending cases for trial so that a final distribution of the sale proceeds may be made.

*Id.* at 10:3-12; JPTO UF ¶ 25; JC Ex. 44 (the brief was filed in response to "Debtor's Motion to Reinstate Court's Motion to Dismiss Bankruptcy and Motion to Reinstate Court's Motion to Dismiss; also Motion for Discharge as a viable Alternative"); *see* Trustee's RJN, ¶ 3, Ex. 3; Docket No. 102, Notice of Motion to Reinstate Court's Motion to Dismiss Bankruptcy and Motion to Reinstate Court's Motion to Dismiss, also Motion for Discharge as a Viable Alternative; Docket No. 129, Positions by James Wallace, Rebecca Wallace, and Gloria Suess; Dimitruk Decl., ¶ 35.

50.    On August 26, 2008, the court denied Debtor's request for voluntary dismissal and vacated the OSC re Dismissal.  JPTO UF ¶ 30 (the JPTO stated that orders on the dismissal motion and OSC were entered on September 2, 2008 but no such orders appear on the docket); Trustee's RJN, Ex. 3, Court's docket re: Bankruptcy Case Number 2:12-bk-16090-RK, entries between Docket Nos. 133 and 134.

51.    On September 2, 2008, the court entered Orders denying Debtor's request for voluntary dismissal and vacating the OSC re Dismissal.  JPTO UF ¶ 30; Hays Trial Decl., ¶ 27.

52.    On September 18, 2008, Trustee filed the Opposition to Debtor's Motion for Second Reconsideration as Per the Order of the Bankruptcy Appellate Panel.  Docket No. 135, Trustee's Opposition to Debtor's Motion for Second Reconsideration as per the Order of the Bankruptcy Appellate Panel; Hays Trial Decl., ¶ 68(p).

53.    In February 2009, Debtor passed away, and Zeman became the administrator for Debtor's probate estate.  JPTO UF ¶ 31; *see also* Trustee's RJN, Ex. 3, Court's docket re: Bankruptcy Case Number 2:12-bk-16090-RK, Docket No. 153, Notice of Lodging Certified Copies of Order for Probate and Letters of Administration for the Estate of Catherine Z. Cass, and Docket No. 154, Order for Substitution of Debtor Catherine Z. Cass by Christine Zeman, Administrator of the Estate of Catherine Z. Cass; Hays Trial Decl., ¶ 28.

54.     On May 8, 2009, Trustee substituted Marshack Hays as his general counsel.  JPTO UF ¶ 32; Trustee's RJN, Ex. 3, Court's docket re: Bankruptcy Case Number 2:12-bk-16090-RK, Docket No. 137, Substitution of Attorney; Hays Trial Decl., ¶ 30.

55.     On June 11, 2009, Debtor's appeal of the Avoidance Judgment was dismissed by the Bankruptcy Appellate Panel of the Ninth Circuit ("BAP") as a result of Debtor's death and the failure of a personal representative for Debtor subsequently to appear in and prosecute the appeal.  JPTO UF ¶ 33.

56.     On January 27, 2010, Trustee through his attorneys at Marshack Hays filed an adversary proceeding against Judgment Creditors seeking declaratory relief.  JPTO UF ¶ 34; JC Ex. 48; Trustee's RJN, Ex. 3, Court's docket re: Bankruptcy Case Number 2:12-bk-16090-RK, Docket No. 156, Complaint for (1) Declaratory Relief Re: Validity, Priority and Extent of Alleged Judgment Lien; and (2) Avoidance, Recovery and Preservation of Unauthorized Post-Petition Transfer.

57.     On March 3, 2010, Judgment Creditors filed an answer to the complaint filed by Trustee.  JPTO UF ¶ 35; JC Ex. 52; Hays Trial Decl., ¶ 36.

58.     On March 3, 2010, Judgment Creditors filed a counterclaim against Trustee.  JPTO UF ¶ 36; JC Ex. 53; Hays Trial Decl., ¶ 37.

59.     On April 26, 2010, Trustee filed an answer to the counterclaim by Judgment Creditors.  JPTO UF ¶ 37; JC Ex. 56.

60.     On May 24, 2010, Judgment Creditors filed a first amended counterclaim. JPTO UF ¶ 38; JC Ex. 62.

61.     On January 27, 2010, Trustee filed a supplemental brief in support of the objection to the homestead exemption.  JPTO UF ¶ 40; JC Ex. 47; Trustee's RJN, Ex. 3, Court's docket re: Bankruptcy Case Number 2:12-bk-16090-RK, Docket No. 155, Notice of Hearing and Trustee's Supplemental Objections to Debtor's Claimed Homestead Exemption; Hays Trial Decl., ¶ 32.

62.     On February 16, 2010, Trustee filed a reply to Debtor's opposition to the

1   homestead objection.  JPTO UF ¶ 41; JC Ex. 49; Trustee's RJN, Ex. 3, Court's docket re:

2   Bankruptcy Case Number 2:12-bk-16090-RK, Docket No. 158, Reply to Opposition to

3   Trustee's Objections to Debtor's Claimed Homestead Exemption; Hays Trial Decl., ¶ 34.

4        63.    On March 2, 2010, Trustee filed another supplemental brief in support of

5   the objection.  JPTO UF ¶ 42; JC Ex. 50; Trustee's RJN, Ex. 3, Court's docket re:

6   Bankruptcy Case Number 2:12-bk-16090-RK, Docket No. 161, Trustee's Supplemental

7   Brief Re: Objections to Debtor's Claimed Homestead Exemption; Hays Trial Decl., ¶ 35.

8        64.    On March 12, 2010, Judgment Creditors filed a brief with respect to

9   Debtor's claimed homestead exemption.  JPTO UF ¶ 43; JC Ex. 54; Trustee's RJN, Ex.

10  3, Court's docket re: Bankruptcy Case Number 2:12-bk-16090-RK, Docket No. 164,

11  Objections to the Claim of Exemption; Hays Trial Decl., ¶ 38.

12       65.    On May 6, 2010, the court entered an Order regarding Debtor's claim of

13  exemption (the "Exemption Order").  JPTO UF ¶ 44; JC Ex. 57; Trustee's RJN, Ex. 3,

14  Court's docket re: Bankruptcy Case Number 2:12-bk-16090-RK, Docket No. 170, Order

15  Re: Trustee's Objections to Debtor's Claimed Homestead Exemption.

16       66.    In its Exemption Order, the court determined that Debtor's heirs were not

17  entitled to exempt any portion of the proceeds of sale of the Property.  JPTO UF ¶ 44; JC

18  Ex. 57; Trustee's RJN, Ex. 3, Court's docket re: Bankruptcy Case Number 2:12-bk-

19  16090-RK, Docket No. 170, Order Re: Trustee's Objections to Debtor's Claimed

20  Homestead Exemption; Hays Trial Decl. ¶ 49.

21       67.    Trustee procured an all cash "as-is" offer to purchase the Property for

22  $200,000.  JPTO UF ¶ 45; Hays Trial Decl., ¶ 40.

23       68.    Upon recovery by Trustee of Debtor's residence, it was in substantial

24  disrepair.  Trustee cleaned the Property and prepared it for listing.  Hays Trial Decl., ¶ 39.

25       69.    Trustee employed a broker to solicit overbidders.  JPTO UF ¶ 46; Hays

26  Trial Decl., ¶ 68(a) and (b).

27       70.    On March 30, 2010, Trustee filed a motion to approve the sale of the

28  Property (the "Sale Motion").  JPTO UF ¶ 47; JC Ex. 55; Hays Trial Decl., ¶ 41.

71.    In the Sale Motion, Trustee sought to sell the Property for the benefit of the bankruptcy estate.  JPTO UF ¶ 48; *see also,* Dimitruk Decl., ¶ 36.

72.    Judgment Creditors filed objections to the Sale Motion.  JPTO UF ¶ 49; JC Ex. 59; RJN Ex. 3, Court's docket re: Bankruptcy Case Number 2:12-bk-16090-RK, Docket No. 169, Objections by the Judgment Creditors to the Trustee's Motion for Authorization to Sell Property and to Sell Property as Requested by the Trustee; Hays Trial Decl., ¶ 42.

73.    Prior to the hearing on the Sale Motion, Trustee received and accepted an overbid of $280,000.  Hays Trial Decl., ¶ 43.

74.    At the hearing on the Sale Motion, there were five cash bidders.  JPTO UF ¶ 50; Hays Trial Decl., ¶ 44.

75.    After conducting an auction in open court, the sales price was increased to $321,000.  JPTO UF ¶ 51; Hays Trial Decl., ¶ 45.

76.    This amount exceeded Judgment Creditors' opinion as to the value of the Property and they withdrew their objection to Trustee's proposed sale.  JPTO UF ¶ 52; Hays Trial Decl., ¶ 46.

77.    On June 1, 2010, the court entered an Order approving Trustee's sale of the Property for $321,000.  JPTO UF ¶ 53; JC Ex. 63; Trustee's RJN, Ex. 3, Court's docket re: Bankruptcy Case Number 2:12-bk-16090-RK, Docket No. 173, Order Approving Trustee's Motion for Authorization to Employ a Broker to Sell Property (1) Outside the Ordinary Course of Business; (2) Free and Clear of Liens; (3) Subject to Overbid; (4) For Determination of Good Faith Purchaser Section 363(m); (5) To Pay Trustee's Insurance Agency; and (6) To Pay for Property Maintenance; Hays Trial Decl., ¶ 51.

78.    After payment of costs of sale and all known liens, except the abstract of judgment recorded by Judgment Creditors, the net proceeds of the sale were $292,730.95.  JPTO UF ¶ 54; Dimitruk Decl., ¶ 19; Hays Trial Decl., ¶ 53.

79.    Trustee's attorneys filed separate fee applications seeking allowance of the

1  fees and costs incurred from January 2007 through and including May 31, 2010 as

2  administrative expenses pursuant to 11 U.S.C. §§330 and 331.  JPTO UF ¶ 55; JC Exs.

3  64 (Rus, Miliband & Smith) and 65 (Marshack Hays); Dimitruk Decl., ¶ 27; Hays Trial

4  Decl., ¶ 54.

5        80.    Judgment Creditors opposed these fee applications.  JPTO UF ¶ 56; JC Ex.

6  68; Hays Trial Decl., ¶¶ 55, 68(q).

7        81.    On March 24, 2011, the court entered an order approving reimbursement of

8  100 percent of the expenses and 50 percent of the fees requested by Marshack Hays

9  and Rus, Miliband & Smith, on an interim basis.  JPTO UF ¶ 57; JC EX. 74; Trustee's

10  RJN, Ex. 3, Court's docket re: Bankruptcy Case Number 2:12-bk-16090-RK, Docket No.

11  237, Order on (1) First and Final Fee Application of Rus, Miliband and Smith and (2) First

12  Interim Fee Application of Marshack Hays, LLP, Former and Current Counsel for Chapter

13  7 Trustee; Hays Trial Decl., ¶ 56.  The fee application order reserved ruling on the

14  benefit, reasonableness, and necessity of the remaining 50% of the fees until the

15  litigation between Judgment Creditors and Trustee was resolved.  *Id.*

16        82.    On April 6, 2012, the court conducted a trial of the Fraudulent Transfer

17  Adversary Proceeding.  JPTO UF ¶ 58; Hays Trial Decl., ¶ 57.

18        83.    On August 31, 2012, the court entered its memorandum decision holding

19  that Judgment Creditors held a lien on the proceeds received by Trustee from the sale of

20  the Property.  JPTO UF ¶ 59; JC Ex. 75; Hays Trial Decl., ¶ 58.

21        84.    Trustee appealed the court's decision determining that Judgment Creditors'

22  lien attached to the sales proceeds.  JPTO UF ¶ 60; Hays Trial Decl., ¶ 59.

23        85.    On April 11, 2013, the Bankruptcy Appellate Panel affirmed this court's

24  August 31, 2012 decision that Judgment Creditors' lien attached to the sales proceeds.

25  JPTO UF ¶ 61; JC Ex. 98; Hays Trial Decl., ¶ 60.  Trustee has timely appealed the

26  Bankruptcy Appellate Panel's decision affirming the court's decision to the United States

27  Court of Appeals for the Ninth Circuit, where the matter currently remains pending.  *Id.*

28        86.    Marshack Hays submitted a summary of its time and expense records for

1 the Avoidance Action, homestead exemption objection, and sale of Debtor's residence as

2 kept in the ordinary course of business.  JPTO UF ¶¶ 62, 64, 66; JC Exs. 79, 80, and 81,

3 respectively; Hays Decl., ¶¶ 9, 10, 11; Declaration of Charles W. Daff in Support of

4 Trustee's Motion for Order Granting Surcharge Pursuant to 11 U.S.C. §506(c) filed on

5 June 15, 2010 as Docket No. 186 ("Daff Decl."), ¶¶ 8, 9.

6    87.    Rus, Miliband & Smith submitted a summary of its time and expense

7 records for fees and costs incurred in this case.  JPTO UF ¶ 68; JC Ex. 99; Daff Decl., ¶¶

8 6, 7.

9    88.    On February 19, 2013, Rus, Miliband & Smith and Marshack Hays filed

10 renewed applications seeking the remaining 50 percent of their fees that were requested

11 in their first interim fee applications.  JPTO UF ¶ 71; JC Ex. 85; Hays Trial Decl., ¶¶ 62,

12 68(r).  The court denied the renewed applications pending final fee applications.  *Id*.

13    89.    At the time Mrs. Cass filed her bankruptcy petition on January 5, 2007, the

14 amount due to Judgment Creditors under the October 28, 2005 judgment was

15 $358,048.78.  The amount is calculated as follows:

16    a.    $320,000.00 (the judgment debt) x 10% + $32,000.00 annual interest.

17    b.    $32,000.00 annual interest ÷ 365 days per year = $87.67 daily interest.

18    c.    The number of days between October 28, 2005 and January 5, 2007 = 434.

19    d.    $87.67 daily interest x 434 days = $38,048.78.

20    e.    $320,000.00 + $38,048.78 = $358,048.78.

21 JPTO UF ¶ 73; Dimitruk Decl., ¶ 14.

22    90.    Debtor stated in her Schedule D, filed on January 5, 2007, in conjunction

23 with her bankruptcy petition, that the value of the residence was $500,000.  JPTO UF ¶

24 74; JC Ex. 100.

25    91.    On July 15, 2010, Trustee filed a "Statement of Property Sold Pursuant to

26 FRBP 6004(F)(1) and LBR 6004-1(g)."  JPTO UF ¶ 75; JC Ex. 71.

27    92.    Debtor stated in her Schedule D, filed on January 5, 2007, in conjunction

28 with her bankruptcy petition, and in her Schedule A, that the value of the deed of trust

1    held by Union Bank was $19,000.  JPTO UF ¶ 77; JC Exs., 100, 101; Dimitruk Decl., ¶

2    17.  The amount reported by Trustee as having been paid to Union Bank at the close of

3    escrow on June 15, 2010 was a total of $18,687.33.  JPTO UF ¶ 77; JC Ex. 71; Dimitruk

4    Decl., ¶ 17.

5        93.      The sum of $9,655.96 was paid as costs in the close of the escrow on June

6    15, 2010, which represented slightly over 3 percent of the sale price.  JPTO UF ¶ 78; JC,

7    Ex. 71; Dimitruk Dec., ¶ 18.

8        94.      The net proceeds from the sale of the residence were $292,730.95.  JPTO

9    UF ¶ 79; Dimitruk Decl., ¶ 19.

10       95.      In conjunction with this surcharge motion, Judgment Creditors propounded

11    written interrogatories to Trustee.  A copy of the interrogatory responses is included in the

12    record.  JPTO UF ¶ 83; JC, Ex. 97.

13       96.      Interrogatory number 3 posed the following question: "Please describe how

14    you learned that the abstract of judgment that James Wallace, Rebecca Wallace and

15    Gloria Suess caused to be recorded was recorded."  Trustee said: "The Trustee does not

16    recall, but it was in the context of his duties as Chapter 7 Trustee for the bankruptcy

17    estate for Catherine Cass."  *Id.*

18       97.      On behalf of Trustee, Marshack Hays incurred $9,407.00 in fees and

19    $395.55 in costs avoiding and recovering the Transfer.  Hays Trial Decl., ¶ 65; JC Ex 79.

20       98.      On behalf of Trustee, Marshack Hays incurred $15,139 in fees and $106.39

21    in costs in successfully obtaining an order that Trustee did not have to pay Debtor's

22    claimed $150,000 homestead exemption out of the proceeds of sale of the Property.

23    Hays Trial Decl., ¶ 66; JC Ex 80.

24       99.      On behalf of Trustee, Marshack Hays incurred $14,687.00 in fees and

25    $133.85 in expenses related to selling the Property.  Hays Trial Decl., ¶ 67; JC, Ex 81.

26       100.     The total fees and costs described in the three previous paragraphs and

27    detailed in JC, Exhibits 79-81, is $39,233 in fees and $635.79 in costs.

28       101.     On behalf of Trustee, Rus, Miliband & Smith, incurred $55,700 in fees and

$4,805.88 in expenses in connection with Trustee's efforts to avoid the Transfer, which included opposing Debtor's numerous attempts to have her case dismissed, negotiating a resolution of the fraudulent transfer adversary proceeding and a suspension of Debtor's bankruptcy case, and objecting to Debtor's claimed homestead.  Trial Declaration of Cathrine M. Castaldi re: Trustee's Motion for Order Granting Surcharge Pursuant to 11 U.S.C. §506(c), filed as Docket No. 324 ("Castaldi Decl.").

102.    Rus, Miliband & Smith incurred $1,275.00 in conferring with Trustee and a real estate broker to establish the value of the Property during various times in the course of the bankruptcy case.  Castaldi Decl., ¶ 7.

103.    On behalf of Trustee, Rus, Miliband & Smith, incurred $25,550.00 in prosecuting the fraudulent transfer claim against Zeman. Ultimately, Rus, Miliband & Smith was able to circumvent a lengthy trial and dispute with respect to the fraudulent transfer claim by negotiating a resolution with Zeman and Judgment Creditors. According to Rus, Miliband & Smith, this required communication with counsel for Zeman and counsel for Judgment Creditors and resulted in a judgment in favor of the Estate that allowed for recovery of the Property.  Castaldi Decl., ¶ 8; JC, Exs. 43, 64.

104.    After entry of the Stipulated Judgment, Debtor appealed entry of the Stipulated Judgment to the Bankruptcy Appellate Panel. Trustee incurred $16,425.00 in defending this appeal, which was dismissed upon the death of Mrs. Cass.  Castaldi Decl., ¶ 9.

105.    Rus, Miliband & Smith incurred $2,962.50 in recovering possession of the Property from the County of Orange after Debtor's death.  These activities included corresponding with the County of Orange, reviewing release forms requested by the county and obtaining possession of the keys, and access to the home, so that Trustee could ready the home for sale.  Castaldi Decl., ¶ 10.

106.    On May 11, 2007, Rus, Miliband & Smith assisted Trustee in objecting to Debtor's claimed homestead exemption in the amount of $150,000.  Castaldi Decl., ¶ 11; JC, Ex. 23. Rus, Miliband & Smith incurred $4,575.00 in connection with the objection to

1  Debtor's Homestead Exemption, which objection was ultimately sustained by the court.

2  Castaldi Decl., ¶ 11.

3       107.    Trustee incurred $4,912.50 in prosecuting the Motion to Abandon the

4  Estate's Right to prosecute Mrs. Cass's appeal of the judgment obtained against her by

5  Judgment Creditors to its successful conclusion.  Castaldi Decl., ¶ 12.

6       108.    In response to Marshack Hays's Interim Fee Application for the period from

7  April 21, 2009 through May 31, 2010 and the First and Final Application for Allowance of

8  Fees and Costs filed by Rus, Miliband & Smith, APC, for the period from March 12, 2007

9  through April 30, 2010, the Office of the United States Trustee evaluated all of the fees

10 and costs incurred by Trustee in avoiding and recovering the Transfer.  The Office of the

11 United States Trustee stated:

> The U.S. Trustee has reviewed the RMS and MH compensation applications in detail and submits that the fees requested are reasonable as required under 11 U.S.C. §330(a)(3)(A) through §330(a)(3)(F) as follows:
>
> (A) Time spent on particular entries appears reasonable. In addition to monthly invoices, the applications contain detailed narrative descriptions of services and costs broken into numerous different categories.  As noted above, the bulk of item expended related to litigation necessary for the estate to take title to the Santa Ana Property and time needed to respond to Debtor's numerous motions and objections, many of which appear to be unfounded.
>
> (B) Expenses appear reasonable and are detailed by category;
>
> (C) Services appear reasonable and necessary to the administration of the estate, however, a 20% hold back is suggested to allow the case to conclude;
>
> (D) Both RMS and MH have reasonable blended hourly rates of $375 (RMS) and $277 (MH), evidencing that less complex matters were delegated to employees with lower hourly rates;
>
> (E) Counsel at RMS and MH have vast experience and exceptional knowledge and skill in the Orange County, CA bankruptcy community and were fully capable of handling the services rendered; and
>
> (F) Fees sought appear customary within the local community.

> While counsel fees are substantial, they spanned over a three year period and appeared necessary to prevail in litigation regarding title to the Santa Ana Property. Substantial time also was expended to respond to the Debtor's repeated efforts to obviate applicant's efforts. . . .
>
> Trustee's independent review failed to discover any services or costs which are not compensable.

Trustee's RJN, Ex. 4, Docket No. 273, Comment of United States Trustee to Applications Seeking Allowance of Fees and Costs by Counsel for Chapter 7 Trustee; JC Ex. 69.

109.    On April 8, 2011, the court entered an order approving payment on an interim basis by Trustee of $30,269 in fees and $1,440.53 in costs to Marshack Hays and $55,856.25 in fees and $4,805.88 in costs to Rus, Miliband & Smith (the "Fee Award"). The Fee Award represented 50 percent of the Firms' fees incurred between October 1, 2008 and May 31, 2010 and 100 percent of the Firms' costs during that time period.  The Fee Award was without prejudice to the Firms later applying to be paid the balance of the fees and costs requested.  Trustee's RJN, ¶ 3, Ex. 3, Court's docket re: Bankruptcy Case Number 2:12-bk-16090-RK, Docket No. 246, Order Re Applications for Allowance of Fees and Costs Filed by Marshack Hays and Rus, Miliband, & Smith, APC.

110.    Judgment Creditors' counsel, Mr. Dimitruk, acknowledged during his deposition that his clients benefited from Trustee's efforts in this case, but also stated that the same result could have been accomplished in the state court action at far less cost. Mr. Dimitruk testified at his deposition as follows:

> Q: Do you on behalf of your clients take the position that the stipulation that avoided and recovered the transfer from the debtor to Ms. Zeman benefited your clients in any way?
> A: Yes.
> Q:  And in what way did that stipulation provide benefit to your clients?
> A: It achieved, in a summary fashion, a part of what they were attempting to achieve in the state court action that they filed against both of them, which was the setting aside of the transfer as a fraudulent transfer. The result is something that my clients started in a lawsuit that they filed in a state court action.

JC Ex. 95, Deposition of David Dimitruk, 36:20-37:8.

> Q: Okay. Do you believe that any of the actions taken by the trustee that resulted in the exemption order benefited your clients in any way?
> A: Yes.
> Q: And how did your clients benefit?
> A: It spared them what I consider to be the meager cost of accomplishing the same thing that they could have accomplished in the state court action.

JC Ex. 95, Deposition of David Dimitruk, 37:20-25-38:3.

> Q: In this case, the trustee actually effectuated a sale of the property, correct?
> A: Yes, sir.
> Q: Do you believe that any of the actions taken by the trustee in effectuating a sale of property benefited or potentially benefited -- will benefit your clients in any way?
> A: As to all of the above questions, yes.
> Q: Okay. And can you describe what you believe to be benefit?
> A: In a similar way that I responded to the question about the setting aside of the sale, the conversion, transformation of the property into cash is something that my clients were attempting to do in the state court action, and could have done at a far less cost.

Id., 38:3-18.

111.    As discussed herein, the court finds that the preponderance of the evidence shows that as a result of the efforts of Trustee's counsel, Marshack Hays and Rus, Miliband & Smith, Judgment Creditors have benefited in the following ways:

a.    Debtor's transfer of title to her residence to her daughter, Mrs. Zeman, was avoided, recovered, and preserved by Trustee for the benefit of creditors, including Judgment Creditors;

b.    Through Trustee's avoidance of the transfer, Debtor lost her claimed $150,000 homestead exemption, which would have had priority over the judgment lien of Judgment Creditors; and

c.    Debtor's residence was sold for $321,000 through a sale in this bankruptcy case.

See Hays Trial Decl., ¶ 63; *see also, Daff v. Wallace (In re Cass),* 2013 WL 1459272 (9th Cir. BAP 2013), slip op. at *12, *citing, Hitt v. Glass (In re Glass),* 164

1   B.R. 759, 762 (9th Cir. BAP 1994) and 11 U.S.C. §522(g).

2       112.    Based on these facts and numbers, Judgment Creditors netted

3   approximately an additional $50,000 over what they would have received in enforcing

4   their rights outside of bankruptcy, that is, specifically, if they had obtained an order from

5   the state court setting aside the fraudulent transfer from Debtor to her daughter, which the

6   court assumes that they would have, the recovery would have been subject to Debtor's

7   homestead exemption.  As discussed herein, by avoiding the transfer which removed the

8   homestead exemption and conducting an asset sale in this case through the efforts of

9   Trustee's counsel in this case, this meant an additional $150,000 in equity from the sale

10  of Debtor's residence to pay Judgment Creditors, which they would not have been entitled

11  to outside of bankruptcy, and after deducting litigation costs in the approximate amount of

12  $100,000 claimed by Trustee's counsel for their efforts in Trustee's surcharge motion, this

13  leaves roughly an additional $50,000 to benefit Judgment Creditors on their judgment

14  lien.

15          III.    **CONCLUSIONS OF LAW**

16          1.    The Motion to Surcharge requires the court to decide whether certain fees

17  and costs incurred by Trustee to the law firms of Marshack Hays and Rus, Miliband &

18  Smith (1) were reasonable, necessary, and benefited Judgment Creditors, or (2) were

19  consented to by Judgment Creditors such that the court should surcharge Judgment

20  Creditors' lien to reimburse the Estate for such fees and costs.  *Compton Impressions Ltd*

21  *v. Queen City Bank, N.A. (In re Compton Impressions, Ltd.)* 217 F.3d 1256, 1260 (9th

22  Cir. 2000); *Central Bank of Montana v. Cascade Hydraulics & Utility Service, Inc. (In re*

23  *Cascade Hydraulics & Utility Service, Inc.)*, 815 F.2d 546, 548 (9th Cir. 1987); see also,

24  *Debbie Reynolds Hotel & Casino, Inc. v. Calstar Corporation, Inc. (In re Debbie Reynolds*

25  *Hotel & Casino, Inc.)*, 255 F.3d 1061, 1068 (9th Cir. 2001) (the bankruptcy trustee is

26  entitled to a surcharge to the extent that the costs incurred were (1) reasonable and

27  necessary and benefited the secured creditor, or (2) consented to by the secured

28  creditor).  The fees and costs Trustee seeks to recover were incurred in successfully

1    avoiding and recovering Debtor's transfer of her residence to her daughter, Zeman,

2    objecting to Debtor's claimed homestead exemption, and improving, marketing, and

3    selling the Property realizing value for Judgment Creditors on their lien.

4        2.      Trustee does not seek to surcharge Judgment Creditors' lien for any fees or

5    costs incurred in litigating against Judgment Creditors with regard to the validity, priority,

6    or extent of their lien.

7        3.      The Motion to Disgorge filed by Judgment Creditors requests that the Court

8    enter an order disgorging the interim fees and costs previously awarded to Marshack

9    Hays in the amount of $30,269 in fees and $1,440.53 in costs and the fees and costs

10   previously awarded to Rus, Miliband & Smith, in the amount of $55,856.25 in fees and

11   $4,805.88 in costs (the "Fee Award").

12        4.      Pursuant to 11 U.S.C. §506(c), a bankruptcy trustee may recover the

13   reasonable and necessary administrative expenses incurred in the preservation and

14   disposal of property subject to an allowed secured claim. *See*, 11 U.S.C. §506(c); *see*

15   *also*, *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000); *In*

16   *re McLean Wine Co., Inc.*, 463 B.R. 838, 854-855 (Bankr. E.D. Mich. 2011). In the Ninth

17   Circuit, the trustee is entitled to a surcharge to the extent that the costs incurred were (1)

18   reasonable and necessary and that they benefited the secured creditor, or (2) consented

19   to by the secured creditor. *In re Compton Impressions, Ltd.*, 217 F.3d at 1260; *In re*

20   *Cascade Hydraulics & Utility Service, Inc.*, 815 F.2d at 548. "Section 506(c) is the

21   statutory basis for preventing a windfall to a secured creditor." *In re McLean Wine Co.,*

22   *Inc.*, 463 B.R. at 855 (citation omitted).

23        A. <u>Lack of Consent by Judgment Creditors</u>

24        5.      Trustee contends that Judgment Creditors' consent to Trustee's efforts

25   provides a basis to surcharge the lien and that Judgment Creditors' consent can be

26   inferred from their conduct. Judgment Creditors contend that they did not consent to

27   Trustee's efforts. As will be discussed below, the court determines that Judgment

28   Creditors did not consent to Trustee's actions.

6.      Because Trustee does not argue that Judgment Creditors expressly consented, the primary issue is the parties' disagreement as to whether there was implied consent, which is defined specifically for the purposes of 11 U.S.C. §506(c).

7.      The payment of administrative expenses from the proceeds of secured collateral is allowed when those expenses are incurred primarily for the benefit of the secured creditor or when the secured creditor caused or consented to the expense.  *In re Cascade Hydraulics & Utility Service, Inc.,* 815 F.2d at 548.  Consent may be found to have been impliedly given if the creditor "has caused the additional expense."  *Id.* at 549 (citation omitted).  On the other hand, it is improper to imply consent to the recovery of expenses under Section 506(c) from (i) the mere acquiescence by a secured creditor with respect to an attempt to reorganize under Chapter 11 or with the respect to the liquidation of its collateral in a case, (ii) the creditor's mere failure to object to a proposed liquidation, or (iii) the creditor's mere failure to move to lift the automatic stay or take similar action.  *In re Compton Impressions, Ltd.*, 217 F.3d at 1261-1262 (mere cooperation or consent to specific expenses does not establish consent to other expenses).

8.      The court finds that consent of Judgment Creditors to Trustee's litigation efforts cannot be inferred from their conduct.  Trustee argues that on January 29, 2007, Judgment Creditors' counsel, Mr. Dimitruk, sent Trustee a memorandum impliedly consenting to Trustee seeking turnover of the residence from Debtor.  That memorandum stated:  "In case you decide to make a demand on Christine Zeman to convey title back pursuant to the agreement, her address is . . ."  JC, Ex.10 at 00114, January 29, 2007 memorandum from Mr. Dimitruk to Trustee.  The memorandum then went on to offer advice for the 11 U.S.C. §341(a) meeting.  *Id.*

9.      Implied consent is generally limited to instances in which the creditor caused the additional expense.  *In re Cascade Hydraulics & Utility Service, Inc.,* 815 F.2d at 549.  Here, all Mr. Dimitruk's memorandum did was provide Trustee with Zeman's address and some advice for the 11 U.S.C. §341(a) meeting of creditors.  Neither of these pieces of information caused Trustee to incur the expenses sought by the

1  surcharge motion.  While Trustee argues that the overall tone of the memorandum

2  expressed Judgment Creditors' "desire to cooperate" with Trustee to avoid and recover

3  the transfer of the residence, "[m]ere cooperation with the debtor does not make the

4  secured creditor liable for all expenses of administration."  *In re Compton Impressions,*

5  *Ltd.*, 217 F.3d at 1261, *citing, In re Cascade Hydraulics & Utility Service, Inc.,* 815 F.2d at

6  548.

7          10.    Trustee also argues that consent can be implied because Judgment

8  Creditors' counsel, Mr. Dimitruk, did not reply to an email from Trustee which claimed that

9  the estate's rights in Debtor's residence were superior to Judgment Creditors.  On April 2,

10  2007, Mr. Dimitruk filed an adversary action against Debtor that included a request that

11  the court determine that Judgment Creditors had a lien on the residence superior to any

12  interest held by Debtor.  Shortly thereafter, Trustee's counsel, Mr. Hays, emailed Mr.

13  Dimitruk and requested that he "reply to confirm that [his] clients will neither assert any

14  right nor seek entry of any judgment or order that purports to bind the estate as Trustee is

15  not a named-party to this action."  Mr. Hays further asserted to Mr. Dimitruk that "the

16  estate's rights in the residence, the claim to avoid and recover the alleged fraudulent

17  transfer . . . and any right arising from the lis pendens . . . are superior to that of creditors,

18  including your clients."  JPTO UF ¶ 82; JC Ex. 92 at 02332; Hays Trial Decl. ¶ 18.

19  Trustee argues that Mr. Dimitruk implied his approval of Mr. Hays's statements when he

20  did not reply to the email to rebut any of the statements.

21          11.    The court finds that any failure of Mr. Dimitruk as Judgment Creditors'

22  counsel to reply to the email message of Trustee's counsel, Mr. Hays, cannot be

23  construed as implied consent because it did not cause Trustee's pursuit of the avoidance

24  and recovery of the transfer of Debtor's residence.  On the contrary, Mr. Hays's email

25  message stated that Trustee alone had the right to pursue the claims to avoid and

26  recover the alleged fraudulent transfer and that his right to pursue the claims was

27  superior to that of Judgment Creditors.  The email message of Mr. Hays, Trustee's

28  counsel, actually seems to indicate that Trustee intended to pursue the avoidance and

1   recovery claims whether Judgment Creditors consented or not.  The court is thus not

2   persuaded that any failure of Mr. Dimitruk to reply to Mr. Hays's email message caused

3   Trustee to incur additional expense in pursuing the avoidance and recovery action, and

4   therefore cannot be the basis for inferring consent.

5           12.     Trustee also argues that consent can be implied based on Judgment

6   Creditors' participation in the execution of the June 19, 2007 stipulation that avoided and

7   recovered the transfer.  Trustee argues that because the Stipulation is silent with regard

8   to the alleged lien, by signing the Stipulation, Judgment Creditors impliedly, if not

9   expressly, acknowledged that Debtor transferred the beneficial and legal interest in the

10  residence and that the transfer was then being avoided and recovered.

11          13.     It is not clear to the court how Judgment Creditors' acknowledgement that

12  Debtor transferred the beneficial legal interest in the residence and that the transfer was

13  then being avoided and recovered *caused* Trustee to incur expenses in his pursuit of the

14  avoidance and recovery action.  It seems that Judgment Creditors' participation in the

15  Stipulation would have enabled Trustee to minimize expenses by cutting short any

16  possible litigation in the avoidance and recovery action.

17          14.     Trustee also argues that Judgment Creditors impliedly consented based on

18  Mr. Dimitruk's discussion of litigation strategy with Trustee's counsel.  Trustee described

19  a series of May 2007 emails between himself and Mr. Dimitruk discussing strategy

20  regarding "how best to avoid the transfer to Zeman and ensure that Debtor did not

21  receive her homestead exemption."  Hays Trial Decl. ¶ 20. Trustee went on to state that

22  "In my opinion, in these emails Mr. Dimitruk indicated his implied consent to the Trustee

23  taking action to ensure that the transfer was avoided and Debtor not paid her

24  homestead." *Id.*

25          15.     After reviewing the emails described by Trustee, it is difficult for the court to

26  see how Trustee could infer consent from Mr. Dimitruk's comments in the email

27  message.  The only discussion of the homestead exemption was Mr. Dimitruk's question:

28  "what thoughts have you given to the legal effects of a transfer to either Mr. Daff or Mrs.

Cass upon (1) the homestead, (2) Mrs. Cass's claim to a life estate, and (3) Mrs. Cass's

rights to object to the proposal?"  JC Exhibit 92 at 2353.  This question or comment is not

sufficient to imply consent, especially when this comment is found in the same email

message as the following statement: "Acceptance of the offer [referring to the settlement

offer that would eventually produce the June 19, 2007, stipulation], as presently framed,

is better than rejection of it by a counter-offer that is not accepted by Zeman and the

possibility of protracted and expensive litigation should Zeman stand firm on her offer to

transfer to her mother." *Id.*

16.    Trustee also states that on February 20, 2007, Judgment Creditors filed a

response to the United States Trustee's Motion to Dismiss Debtor's case in which

Judgment Creditors requested alternative relief.  In this response, Judgment Creditors

asserted: "A. The Creditors ask this court to consider denying the motion because of the

abuses by Catherine Cass of the judicial system so that her property may be sold by the

Chapter 7 Trustee; B. Alternatively, the Creditors request that if the court dismisses the

petition, it issue a bar against Catherine Cass from filing any further petitions in

bankruptcy for the maximum time the court restrain her. . ." Docket No. 27 at 2:4-6.

Furthermore, on March 20, 2007, Debtor filed a request for voluntary dismissal of her

bankruptcy case.  JPTO ¶ 19. On April 10, 2007, Judgment Creditors filed a response to

Debtor's request for voluntary dismissal in which they stated that the court should "deny

the motion and require the Debtor to require that the property be re-transferred to the

Debtor."  Judgment Creditors alternatively requested that "if the Court is inclined to grant

the Motion, to first require as a condition of dismissal that the property be re-transferred

to the Debtor by recording of an unconditional transfer of title to the property to the

Debtor and in any event, issue an injunction against the Debtor from re-filing any further

bankruptcy petitions either permanently, for a five-year period, or at least the 180 days, or

such other period as the Court considers to be appropriate."  JPTO UF ¶ 21; JC Ex. 18 at

8:14-20.

17.    Judgment Creditors' opposition to Debtor's dismissal between February and

June of 2007 is consistent with Judgment Creditors' cooperation with Trustee, which

appears to have been based on the hope that Trustee would be able to quickly and

inexpensively resolve the avoidance and recovery of the Transfer through stipulation or

some other means of settlement.  On June 20, 2007, Trustee, Judgment Creditors and

Zeman, through their respective counsel, entered into a Stipulation for Entry of Judgment

Avoiding and Recovering Transfer of Real Property.  JPTO UF ¶ 26; JC Ex. 42.  On May

29, 2008, the court entered the Avoidance Judgment pursuant to the June 20, 2007

Stipulation in the Fraudulent Transfer Adversary Proceeding.  JC Ex. 43.  Debtor

appealed entry of the Avoidance Judgment.  JPTO UF ¶ 29.  Hays Trial Decl., ¶ 26.

18.    On August 5, 2008, Judgment Creditors filed Positions by James Wallace,

Rebecca Wallace and Gloria Suess (Docket No. 129), which set forth Judgment

Creditors' position regarding dismissal of Debtor's bankruptcy case.  JC Ex. 44.   In that

pleading, Judgment Creditors stated:

> The Creditors will benefit from *a dismissal because a
> dismissal will avoid the numerous delays and predictable
> litigation expenses that they have sustained by virtue of the
> various positions that Mrs. Cass has taken in this court*. A
> dismissal will entitle them to obtain an order from the state
> court to sell the residence so that the judgment may be
> satisfied. *Denying the motion to dismiss subjects the Creditors
> to further delays and expenses that are not likely to be
> sustained by the streamlined procedures available in the state
> court proceeding for the sale of property*. The Creditors will be
> prejudiced, however, if the court does not also issue an
> injunction and order the trustee to restore title to the
> Residence to Mrs. Cass as conditions of the dismissal. . .

*Id.* at 8:19-27 (emphasis added).  After Debtor appealed entry of the Avoidance

Judgment, it became evident that the Avoidance Litigation was going to be more time

consuming and expensive than Judgment Creditors had anticipated.  By August 2008,

Judgment Creditors moved from opposition to the dismissal of Debtor's bankruptcy case

to supporting dismissal because it had become clear that Debtor's position with respect

to the Avoidance Judgment was going to make the Avoidance Litigation more protracted

and expensive than if Debtor had been content with settlement.  Judgment Creditors'

August 5, 2008, pleading makes clear that by that time Judgment Creditors believed that

1  they would be better served if Debtor's bankruptcy case were dismissed so that

2  Judgment Creditors could pursue more "streamlined procedures available in the state

3  court proceeding for the sale of property." *Id.*

4         19.    The court finds that Trustee has not shown by a preponderance of the

5  evidence that Judgment Creditors expressly or impliedly consented to the additional

6  expenses incurred by Trustee.  While Judgment Creditors may have initially cooperated

7  with Trustee regarding the Avoidance Litigation in bankruptcy court, mere cooperation is

8  not enough to imply consent for the recovery of all of Trustee's expenses.  *In re Compton*

9  *Impressions, Ltd.,* 217 F.3d at 1261.  It appears to the court that Judgment Creditors

10  initially believed that the Avoidance Litigation could be quickly and inexpensively resolved

11  by Trustee through a stipulation or other settlement.  Furthermore, Trustee was the only

12  party who had standing to pursue the Avoidance Action in bankruptcy, so Judgment

13  Creditors had little choice but to acquiesce to Trustee's actions.  Finally, once it became

14  clear to Judgment Creditors that Debtor's position regarding the Avoidance Action was

15  going to lead to time consuming and expensive litigation in bankruptcy court, Judgment

16  Creditors supported dismissal of Debtor's bankruptcy case so that they could pursue

17  more "streamlined procedures available in state court."

18         20.    In the absence of consent by the holder of a secured claim, the facts of a

19  case may justify charging the holder of a secured claim with certain expenses if a clear

20  benefit to the secured creditor can be demonstrated.  *In re Compton Impressions, Ltd.,*

21  217 F.3d at 1262.  Here, as discussed below, the actions taken by Trustee benefited

22  Judgment Creditors, and the court determines that Trustee's Motion to Surcharge

23  Judgment Creditors' lien should therefore be granted.

24       B.  <u>Fees for Services Reasonable, Necessary, and Beneficial to Judgment</u>

25           <u>Creditors</u>

26         21.    Trustee contends that Judgment Creditors benefited from the fees and

27  costs incurred by his attorneys.  Trustee specifically contends that his attorneys' efforts:

28  (1) recovered Debtor's residence from Debtor's daughter, which made it available to sell

1  to pay Judgment Creditors' lien; (2) prevented Debtor from receiving any of the sale

2  proceeds on account of her $150,000 homestead exemption, making more of the

3  proceeds available to satisfy Judgment Creditors' lien; and (3) and improved and

4  marketed the residence, realizing market value for the Property.

5        22.    Judgment Creditors contend that the burden to show that a bankruptcy

6  trustee's attorneys' fees conferred a benefit on a secured creditor is higher than the

7  burden for other types of surcharge motions, such as those seeking reimbursement of

8  money actually paid by a trustee.  Judgment Creditors contend that the burden is so high

9  that it is virtually impossible to meet and that Trustee fails to meet the burden.

10        23.    As discussed above, 11 U.S.C. §506(c) allows "the trustee [to] recover from

11  property securing an allowed claim the reasonable, necessary costs and expenses of

12  preserving, or disposing of, such property to the extent of any benefit to the holder of

13  such claim."  Under this provision, Trustee must demonstrate that the expenses were (1)

14  reasonable, (2) necessary, and (3) beneficial to Judgment Creditors in order to recover.

15  11 U.S.C. §506(c).  As a threshold matter, in order for Section 506(c) to apply, the

16  relevant expenses sought by Trustee must be "necessary" to preserve or dispose of the

17  secured creditor's property.  *In re Compton Impressions, Ltd.,* 217 F.3d at 1260-1261.  To

18  satisfy the benefit test of §506(c), Trustee must establish in quantifiable terms that it

19  expended funds directly to protect and preserve the collateral.  *In re Cascade Hydraulics*

20  *& Utility Service, Inc.*, 815 F.2d at 548.  The amount of Judgment Creditors' benefit limits

21  Trustee's recovery of expenses.  *In re Compton Impressions, Ltd.*, 217 F.3d at 1261

22  (citation omitted).  "Section 506(c) is not intended as a substitute for the recovery of

23  administrative expenses normally the responsibility of the debtor's estate."  *In re Cascade*

24  *Hydraulics & Utility Service, Inc.*, 815 F.2d at 548.

25        24.    Viewing Debtor's actions in this bankruptcy case retrospectively, it is

26  evident that she intended her actions to delay, hinder and/or defraud her creditors,

27  including Judgment Creditors.  After Debtor was sued by Judgment Creditors in state

28  court, she transferred the remainder interest in the Property to her daughter.  Judgment

1   Creditors obtained a money judgment against debtor in state court, and commenced a

2   second action in state court against Debtor and her daughter to avoid the transfer as a

3   fraudulent transfer.   Shortly before the trial in the second action in state court for

4   fraudulent transfer, Debtor commenced this bankruptcy case by filing her voluntary

5   Chapter 7 bankruptcy petition.  The bankruptcy filing gave Debtor temporary relief

6   because the Chapter 7 Trustee started administration of the bankruptcy estate on behalf

7   of creditors, including the Property, in which Debtor had claimed a life estate.  Debtor

8   opposed Trustee's efforts to administer the estate for creditors, including filing requests

9   for replacement of Trustee (ECF 18), for voluntary dismissal (ECF 73), for disallowance

10  of pleadings filed by counsel for Trustee and Judgment Creditors (ECF 90), for

11  reconsideration of orders denying voluntary dismissal and replacement of Trustee (ECF

12  32 and 89), and objections to employment of counsel for Trustee (ECF 90).  The United

13  States Trustee had moved for dismissal of the case for Debtor's failure to obtain credit

14  counseling before filing her bankruptcy petition, but later withdrew that motion (ECF 12

15  and 29).   The court on its own motion issued an order to show cause why the bankruptcy

16  case should not be dismissed for Debtor's failure to obtain prepetition credit counseling,

17  which was supported by Debtor, but opposed by Trustee, Judgment Creditors and the

18  United States Trustee (ECF 70).  The court did not dismiss the bankruptcy case because,

19  as argued by the United States Trustee, citing *In re Mendez*, 367 B.R. 109, 118 (9th Cir.

20  BAP 2007), Debtor was using her failure to obtain credit counseling to seek dismissal not

21  in good faith.  To protect creditors and the integrity of the bankruptcy system, Debtor was

22  not allowed to voluntarily dismiss her bankruptcy case by claiming that her bankruptcy

23  filing was improper due to her own failure to obtain credit counseling.  Trustee

24  abandoned the estate's rights to Debtor's state court appellate claims against Judgment

25  Creditors, and Debtor was allowed to prosecute her appeal through the state appellate

26  system (ECF 180).  Meanwhile, Trustee substituted into the second state court suit to

27  prosecute the claim to avoid the fraudulent transfer of the Property, removed that suit to

28  this court, negotiated avoidance of the transfer of the Property with Debtor's daughter,

1   and defended Debtor's appeal of the judgment avoiding the transfer. Hays Trial Decl. ¶¶

2   19-25.  After obtaining the avoidance judgment, Trustee marketed and sold the Property

3   to benefit the estate and creditors and obtained a good price through an asset sale with

4   overbidding. Hays Trial Decl. ¶¶ 39-45.  Because the court did not dismiss the bankruptcy

5   case in the interest of the estate and creditors, Trustee provided necessary and beneficial

6   services to the estate and creditors in opposing Debtor's litigious efforts to frustrate

7   creditors and administration of the estate described above.  Because the case was not

8   dismissed, Trustee was needed to administer the estate on behalf of creditors, and this

9   included opposing Debtor's efforts to frustrate creditors and estate administration.  Such

10  efforts were needed from the commencement of the case in 2007 and remained

11  necessary after Debtor's death in 2009 because of the continuing efforts of Debtor's

12  daughter, as probate representative, to assert rights adverse to creditors and the estate,

13  including the assertion of Debtor's homestead exemption to the Property.

14          a.  Avoidance Action

15  25.     Trustee incurred $9,407.00 in fees and $395.55 in costs in avoiding and

16  recovering the Transfer through services provided by Marshack Hays.  Trustee incurred

17  $25,550.00 in prosecuting the avoidance action against Zeman while Trustee was

18  represented by Rus, Miliband & Smith.  Ultimately, Rus, Miliband & Smith was able to

19  circumvent a trial of the fraudulent transfer claim by reaching a consensual resolution

20  with Zeman and Judgment Creditors.  Castaldi Trial Decl. ¶ 8.  This required extensive

21  communication with counsel for Zeman and counsel for Judgment Creditors and resulted

22  in a judgment in favor of the Estate that allowed for recovery of the Property.  Trustee

23  also incurred $16,425.00 in defending against Debtor's appeal of the Stipulated

24  Judgment from the Avoidance Action.  Castaldi Trial Decl. ¶ 9.

25          i.  Necessity and Benefit of Fees Incurred in Avoidance Action

26  26.     Trustee's efforts and expenses incurred in avoiding, recovering, and

27  preserving the Transfer were necessary and beneficial to Judgment Creditors because,

28  so long as the bankruptcy case remained open, Judgment Creditors could not have

1   prosecuted avoidance and recovery of the Transfer, and only Trustee had standing to do

2   so.  See 11 U.S.C. §550; *see also, City National Bank v. Chabot (In re Chabot)*, 100 B.R.

3   18, 23 (Bankr. C.D. Cal. 1989) (Chapter 7 Trustee has exclusive right to avoid and

4   recover fraudulent transfers made by a debtor); *see also Estate of Spirtos v. One San*

5   *Bernardino County S.C. Case Numbered SPR 02211*, 443 F.3d 1172, 1176 (9th Cir.

6   2006).

7          27.    Although Judgment Creditors may have initially cooperated with Trustee

8   regarding the Avoidance Litigation in bankruptcy court, once it was clear, around August

9   2008, that Debtor's position with respect to the Avoidance Judgment was going to make

10   the Avoidance Litigation more protracted and expensive than Judgment Creditors had

11   anticipated, Judgment Creditors began to support dismissal of Debtor's bankruptcy case

12   so that they could pursue recovery of the residence in state court.  Judgment Creditors

13   argued that "[d]enying the motion to dismiss subjects the Creditors to further delays and

14   expenses that are not likely to be sustained by the streamlined procedures available in

15   the state court proceeding for the sale of property."  JC Ex. 44 at 8:21-24, Position filed

16   by James Wallace, Rebecca Wallace, and Gloria Suess (Docket No. 129).  The court

17   finds that Judgment Creditors benefited by the actions taken by Trustee because

18   Judgment Creditors could not have prosecuted the avoidance and recovery of the

19   residence so long as the bankruptcy case remained open.

20          28.    Judgment Creditors argue throughout their Proposed Findings of Fact and

21   Conclusions of Law that "at no time did the Trustee assert that he intended to confer any

22   benefit on the Judgment Creditors" through Trustee's actions. Judgment Creditors'

23   Proposed Findings of Fact and Conclusions of Law at 7:13-15, 15:13-14, 18:16-19. The

24   court is not aware of any intent requirement in 11 U.S.C. 506(c).  Judgment Creditors

25   appear to read *In re Cascade Hydraulics* as requiring some type of intent to benefit,

26   stating that "Trustee had no intentions of directly benefit the collateral within the meaning

27   of In re Cascade Hydraulics." *Id.* at 38:1-2.  Without a quotation or pin cite to specific

28   case law, the court is unable to follow the thrust of Judgment Creditors' argument.  As

1    discussed elsewhere in these findings, the court determines Trustee and his attorneys'

2    actions did benefit Judgment Creditors.  Although Trustee unsuccessfully sought a

3    judicial declaration that Judgment Creditors were not secured creditors, Trustee never

4    disputed that Judgment Creditors were proper creditors (Trustee took the position that

5    Judgment Creditors were unsecured on grounds that they did not perfect their judgment

6    lien on the Property, which position was rejected by this court and the Bankruptcy

7    Appellate Panel, *Daff v. Wallace (In re Cass),* 476 B.R. 602 (Bankr. C.D. Cal. 2012), *aff'd,*

8    2013 WL 1459272 (9th Cir. BAP 2013)), and even if Trustee were successful, these

9    creditors would have benefited from Trustee's actions regarding the homestead

10   exemption and Avoidance Litigation as unsecured creditors.

11                  ii.    Reasonableness of Fees Incurred in the Avoidance Action

12          29.    Debtor filed numerous pleadings of questionable legal merit in her

13   bankruptcy case and repeatedly opposed Trustee's efforts to recover, preserve and

14   administer the residence, which required Trustee's response and increased the expenses

15   incurred.  *See, e.g.,* Debtor's "Request for Court's Reconsideration of Ruling . . .

16   Regarding Replacement of Trustee Charles Daff," Trustee's response, Debtor's request

17   for voluntary dismissal, Trustee's response, Debtor's "Notice of and 1. Objection to

18   Motion to Disallow Pleadings of D.E. Hays, etc.," Debtor's Objection to D. Edward Hays's

19   Request that the Court to Deny Debtor's Request for Reconsideration of Retaining

20   Trustee Daff," Debtor's appeal of the judgment avoidance of transfer or the residence.

21   JPTO UF ¶¶ 80, 19, 29; Trustee's RJN, Ex. 3, Court's docket re: bankruptcy case number

22   2:12-bk-16090-RK, Docket Nos. 32, 45, 46; Declaration of D. Edward Hays in Support of

23   Trial re: Surcharge filed on August 26, 2013 as Docket No. 323 ("Hays Trial Decl."), ¶¶

24   26, 68(c)(d) and (e).  Given Debtor's litigious tactics, the court finds that Trustee's efforts

25   and the expenses incurred in the avoidance action were reasonable.

26          30.    In addition, in response to Marshack Hays's Interim Fee Application for the

27   period from April 21, 2009 through May 31, 2010, the Office of the United States Trustee

28   evaluated and found reasonable all of the fees and costs incurred by Trustee's counsel,

Marshack Hays and Rus, Miliband & Smith, in avoiding and recovering the Transfer. The

U.S. Trustee's Office stated:

> The U.S. Trustee has reviewed the RMS and MH compensation applications in detail and submits that the fees requested are reasonable as required under 11 U.S.C. §330(a)(3)(A) through §330(a)(3)(F) as follows:
>
> (A)  Time spent on particular entries appears reasonable. . . . As noted above, the bulk of item expended related to litigation necessary for the estate to take title to the Santa Ana Property and time needed to respond to Debtor's numerous motions and objections, many of which appear to be unfounded.
>
> (B)  Expenses appear reasonable and are detailed by category;
>
> (C)  Services appear reasonable and necessary . . . ;
>
> (D)  Both RMS and MH have reasonable blended hourly rates . . . ;
>
> While counsel fees are substantial, they spanned over a three year period and appeared necessary to prevail in litigation regarding title to the Santa Ana Property. Substantial time also was expended to respond to the Debtor's repeated efforts to obviate applicant's efforts. . . .
>
> Trustee's independent review failed to discover any services or costs which are not compensable.
>
> JC 69 at 4:6-5:14.

31.    The court finds that Trustee took reasonable steps to substitute into

Judgment Creditors' state court action, remove it to the this bankruptcy court, prosecute

it, respond to Debtor's defenses, and ultimately recover Debtor's residence for the Estate

and creditors.

32.    Trustee's actions were necessary and reasonable to preserve the residence

and liquidate it for the benefit of creditors, including Judgment Creditors.

> b.  Debtor's Claimed Homestead Exemption

33.    In Debtor's Schedules A and C to her bankruptcy petition, she claimed a life

estate interest in the residence and a homestead exemption in the amount of $150,000.

JPTO UF ¶ 39; JC Ex. 8; Hays Decl., ¶ 6; Trustee's RJN, Ex. 3, Court's docket re:

1  bankruptcy case number 2:12-bk-16090-RK, Docket No. 61.  Apparently, she claimed a

2  higher homestead exemption in the amount of $150,000 as a person 65 years of age or

3  older pursuant to California Code of Civil Procedure §704.730(a)(3)(2007).  Trustee's

4  counsel filed an objection and several supplemental briefs objecting to Debtor's claimed

5  homestead exemption and arguing that no portion of the exemption should be paid from

6  the proceeds generated from the sale of the Property.  The court held that Trustee did not

7  sell anything owned by Debtor on the petition date in which Debtor could claim an

8  exemption.  Instead, Trustee avoided and recovered the remainder interest transferred by

9  Debtor to Zeman pursuant to the Grant Deed with Life Estate.  The remainder interest

10  recovered by Trustee subsequently became fee simple title upon Debtor's death.  Docket

11  No. 170. Trustee incurred $15,139 in fees and $106.39 for out of pocket expenses in

12  opposing Debtor's $150,000 claimed homestead exemption.  Hays Trial Decl., ¶ 66.

13  Trustee incurred an additional $4,575.00 in connection with the objection to Debtor's

14  Homestead Exemption for fees for services provided by Rus, Miliband & Smith.  Castaldi

15  Trial Declaration ¶ 11.

16      34.      Trustee's actions were necessary to preserve the amount of $150,000

17  claimed by Debtor as her homestead exemption for the Estate and benefited Judgment

18  Creditors.  Under California law, the allowed homestead would have had priority to

19  payment over Judgment Creditors' involuntary judgment lien upon sale of homesteaded

20  property.  California Code of Civil Procedure §§704.720 *et seq.* and 704.810.  As

21  previously stated, through Trustee's avoidance of the transfer approved by court order in

22  May 2008, Debtor lost her claimed $150,000 homestead exemption, which would have

23  had priority over the judgment lien of Judgment Creditors.  *Daff v. Wallace (In re Cass),*

24  2013 WL 1459272, slip op. at *12, *citing, In re Glass,* 164 B.R. at 762 and 11 U.S.C.

25  §522(g).  By avoiding the Transfer and obtaining an order denying payment of the

26  claimed $150,000 homestead amount, Trustee effectively added this amount of money

27  available for payment on Judgment Creditors' lien, which was not available to them

28  outside of bankruptcy.  *Id.*  Accordingly, the court finds that Trustee's efforts in avoiding

1  the Transfer and objecting to the homestead exemption were necessary to payment of

2  Judgment Creditors' lien and necessarily beneficial to them.

3       35.    Judgment Creditors argue in their trial brief that they did not benefit from

4  Trustee's services related to the homestead exemption because Judgment Creditors

5  "could have achieved the same result for less of a cost to them."  *Trial Brief by James*

6  *and Rebecca Wallace and Gloria Suess*, Docket No. 327 at 15:19-20.  Judgment

7  Creditors then go on to explain why Debtor's death in February 2009 caused any claimed

8  homestead exemption to lapse under California law.  *Id.* at 15:20-16:15.  As a result,

9  Judgment Creditors "could have avoided the homestead claim for far less a cost that the

10  Trustee's attorneys charged to get the same result through a much more circuitous way"

11  and on that basis asked the court to disallow the "entire claim associated with the

12  homestead services…" *Id.* at 16:17-20.

13       36.    The court is not persuaded by Judgment Creditors' arguments.  Although

14  Judgment Creditors are correct that Debtor's death prevented the application of a

15  homestead exemption as to Judgment Creditors, Judgment Creditors do not account for

16  the significant period of time between January 5, 2007 when Debtor filed bankruptcy and

17  claimed a homestead exemption, and Debtor's death in February 2009.  After Debtor filed

18  her bankruptcy petition, Judgment Creditors worked with Trustee to object to the claimed

19  homestead exemption, and Trustee filed an objection on May 11, 2007.  That objection

20  continued to be litigated even after Debtor's death, and her daughter and probate

21  representative, Zeman, filed an opposition to the objection on February 9, 2010.  Docket

22  No. 160.  On May 6, 2010, the court entered an order determining that the disputed claim

23  of exemption was rendered moot by Debtor's death and that no portion of the proceeds of

24  sale shall constitute proceeds of the sale of the Debtor's interest in her life estate. Docket

25  No. 170.  The court is not persuaded by Judgment Creditors' unsupported assertion that

26  they "would have faced little, if any obstacles, [sic] to enforcing the abstract of judgment

27  in a sheriff's sale…" *Trial Brief by James and Rebecca Wallace and Gloria Suess,* Docket

28  No. 327 at 16:15-16.  As has been obvious throughout this case, Debtor and her

1  successor-in-interest, her daughter as probate representative, were both tenacious and

2  unrelenting litigants, and litigating with such adversaries will generally require some

3  expense, if not significant expense.

4       37.      Debtor's death could not have been foreseen at the outset of the litigation

5  over the homestead exemption in the bankruptcy case, and so, at the very least, Trustee

6  is justified in claiming legal fees expended for his attorneys objecting to Debtor's claimed

7  homestead exemption prior to her death in February 2009.  Trustee is entitled to the

8  whole amount of attorneys' fees incurred in litigating the homestead exemption because

9  Debtor's probate representative, Zeman, continued to assert the exemption even after

10  Debtor's death, which required some form of litigation expense to oppose in order to

11  protect the interests of the Estate and creditors.  Despite Judgment Creditors' belief that

12  they could have handled this task more cheaply, there is insufficient evidence to support

13  such an assertion, and the court determines that Trustee's incurrence of attorneys' fees

14  in objecting to the homestead exemption was reasonable, necessary and benefited

15  Judgment Creditors.

16       38.      Accordingly, the court determines that the legal fees of $15,139 and costs

17  of $4,682.39 incurred by Trustee for services of his counsel for litigation with Debtor and

18  her probate representative over the validity of the claimed homestead exemption are

19  reasonable.

20            c.   Sale of Property

21       39.      Trustee incurred $14,687.00 in fees and $133.85 in expenses related to

22  selling the residence with respect to the efforts of Marshack Hays.  Hays Trial Decl. ¶ 67.

23  Prior to Marshack Hays's representation of Trustee, Trustee incurred $2,962.50 in fees in

24  recovering possession of the Property from the County of Orange after Debtor's death.

25  Castaldi Trial Decl. ¶ 10.

26       40.      When Trustee recovered the residence, it was in substantial disrepair, and

27  he incurred costs to clean, maintain and safeguard the residence for sale.  Hays Trial

28  Decl. ¶ 39. Trustee procured an all cash "as-is" offer to purchase the residence for

1    $200,000.  JPTO UF ¶ 45; Hays Trial Decl. ¶ 40.  Trustee then employed a broker who

2    solicited multiple overbidders.  JPTO UF ¶ 46; Hays Trial Decl. ¶ 68(a) and (b).  An

3    overbid of $280,000 was received by Trustee and accepted prior to the sale hearing.

4    Hays Trial Decl. ¶ 43.  At the sale hearing, five overbidders with cash appeared.  JPTO

5    UF ¶ 50; Hays Trial Decl. ¶ 44.  After bidding, the sale price was increased to $321,000.

6    JPTO UF ¶ 51; Hays Trial Decl. ¶ 45.  This amount exceeded Judgment Creditors'

7    opinion as to the value of Debtor's residence.  JPTO UF ¶ 52; Hays Trial Decl. ¶ 46.

8    Trustee's counsel, Marshack Hays and Rus, Miliband & Smith, performed all of the legal

9    work in connection with selling Debtor's residence in this bankruptcy case.

10          41.     It was necessary to sell the residence to obtain proceeds to pay creditors,

11   including the Judgment Creditors' lien, while Debtor's case was in the bankruptcy court.

12   Trustee's efforts resulted in Trustee receiving the highest and best price for the

13   residence, which benefited Judgment Creditors by providing the most possible proceeds

14   for payment of their lien.  The court finds that the legal fees and expenses incurred by

15   Trustee of less than $15,000, less than 5 percent of the sale price, were reasonable.

16          42.     Thus, Judgment Creditors benefited from Trustee's litigation efforts in

17   avoiding the transfer of Debtor's residence, objecting to Debtor's homestead exemption,

18   and selling the residence.  As noted previously, Judgment Creditors' counsel

19   acknowledged that his clients benefited from Trustee's efforts during his deposition as

20   Mr. Dimitruk testified at his deposition as follows:

21                   Q:      Do you on behalf of your clients take the position that
                     the stipulation that avoided and recovered the transfer from
22                   the debtor to Ms. Zeman benefited your clients in any way?
                     A:      Yes.
23                   Q:      And in what way did that stipulation provide benefit to
                     your clients?
24                   A:      It achieved, in a summary fashion, a part of what they
                     were attempting to achieve in the state court action that they
25                   filed against both of them, which was the setting aside of the
                     transfer as a fraudulent transfer. The result is something that
26                   my clients started in a lawsuit that they filed in a state court
                     action.
27
     JPTO UF ¶ 25; JC Ex. 95 at 36:20 – 37:8.
28

                                                41

Q:     Okay. Do you believe that any of the actions taken by
the trustee that resulted in the exemption order benefited your
clients in any way?
A:     Yes.
Q:     And how did your clients benefit?
A:     It spared them what I consider to be the meager cost of
accomplishing the same thing that they could have
accomplished in the state court action.

JC Ex. 95 at 37:20 – 38:2.

Q:     In this case, the trustee actually effectuated a sale of
the property, correct?
A:     Yes, sir.
Q:     Do you believe that any of the actions taken by the
trustee in effectuating a sale of property benefited or
potentially benefited -- will benefit your clients in any way?
A:     As to all of the above questions, yes.
Q:     Okay. And can you describe what you believe to be
benefit?
A:     In a similar way that I responded to the question about
the setting aside of the sale, the conversion, transformation of
the property into cash is something that my clients were
attempting to do in the state court action, and could have
done at a far less cost.

*Id.* at 38:3 – 38:18.

43.     Thus, the court finds that the fees and costs incurred by Trustee regarding
the sale of the Property were beneficial to payment of Judgment Creditors' lien.

C.   No Judicial Estoppel

44.     Judgment Creditors argued that regardless of the reasonableness,
necessity, or benefit of Trustee's efforts, Trustee should be judicially estopped from
seeking to surcharge their judgment lien because Trustee previously argued that they did
not have such a lien.  Judgment Creditors contended that Trustee could not surcharge
their judgment lien for his litigation expenses unless he acknowledged the validity of their
lien.  As previously noted, Trustee had taken the litigating position that Judgment
Creditors did not have a valid lien on the Property, but that in the event the court
determined that the lien was in fact valid, the lien was subject to surcharge under 11
U.S.C. §506(c).  As previously noted, this court determined that Judgment Creditors held
a valid judgment lien against the Property.  Subsequently, Trustee filed his Motion to

42

1   Surcharge.

2   45.    Judicial estoppel applies "where a party assumes a certain position in a

3   legal proceeding, and succeeds in maintaining that position" and provides that "he may

4   not thereafter, simply because his interests have changed, assume a contrary position,

5   especially if it be to the prejudice of the party who has acquiesced in the position formerly

6   taken by him." *New Hampshire v. Maine*, 532 U.S. 742, 751 (2001).  This principle of

7   judicial estoppel, "generally prevents a party from prevailing in one phase of a case on an

8   argument and then relying on a contradictory argument to prevail in another phase." *Id.*

9   (citation omitted).

10   46.    Several factors are considered in determining whether to apply judicial

11   estoppel in a particular case: (1) whether the party's position is "clearly inconsistent" with

12   its earlier position; (2) whether the party has succeeded in persuading a court to accept

13   that party's earlier position; (3) whether the party seeking to assert an inconsistent

14   position would derive an unfair advantage or impose an unfair detriment on the opposing

15   party if not estopped. *New Hampshire v. Maine,* 532 U.S. at 750; *accord, Ah Quin v.*

16   *County of Kauai Department of Transportation,* 733 F.3d 267, 270-271 (9th Cir. 2013).

17   47.    Judicial estoppel does not apply in the present case because Trustee did

18   not succeed in persuading the court to accept Trustee's position that Judgment Creditors'

19   lien was invalid.  Indeed, Trustee's argument that the lien was invalid failed as the court

20   held, now affirmed by the BAP, that the lien was valid.  JPTO UF ¶ 59; JC Ex. 75; Hays

21   Trial Decl., ¶ 58.

22   48.    In addition, Judgment Creditors do not meet the other two required

23   elements of judicial estoppel.  First, Trustee has not taken inconsistent positions.  He has

24   consistently argued that if the court determined that the lien was valid then the lien should

25   be surcharged.  Second, Trustee will not derive an unfair advantage from a surcharge of

26   the lien.  Surcharge will fairly reimburse Trustee for, as explained above, reasonable and

27   necessary expenses incurred for the benefit of Judgment Creditors with respect to their

28   judgment lien.

D. <u>Disgorgement</u>

49.     By his surcharge motion, Trustee seeks to surcharge Judgment Debtors'

lien for $39,868.79 in fees and costs for services of its counsel, Marshack Hays, and

$60,505.88 in fees and costs for services of its former counsel, Rus, Miliband & Smith,

which the court should grant as set forth herein.

50.     By their disgorgement motion, Judgment Creditors seek an order disgorging

the fees and costs previously paid to Marshack Hays in the sum of $31,709.53 and Rus,

Miliband & Smith in the sum of $60,622.13.

51.     Because Judgment Creditors' lien will be surcharged in an amount in

excess of the interim fee awards previously made, the court determines that that

Trustee's counsel, Marshack Hays and Rus, Miliband & Smith, may retain the interim

fees and costs previously awarded and paid to them because Judgment Creditors'

Motion to Disgorge should be denied as discussed herein.

**IV.     CONCLUSION**

For the foregoing reasons, the court determines that it should grant Trustee's

Motion to Surcharge because Trustee has shown by a preponderance of the evidence

that the fees and costs incurred for services of his counsel directly benefited Judgment

Creditors with respect to their judgment lien and therefore, directs Trustee to lodge an

order surcharging Judgment Creditors' lien for Trustee's fees and costs incurred for

services of his counsel that directly benefited Judgment Creditors with respect to their

judgment lien in the following amounts: $39,233 for reimbursement of fees and $635.79

for reimbursement of costs incurred by Trustee and owed to the Estate's counsel,

Marshack Hays LLP, and $55,700 for reimbursement of fees and $4,805.88 for

reimbursement of costs incurred by Trustee and owed to the Estate's former counsel,

Rus, Miliband & Smith, APC.  Also, for the foregoing reasons, the court should deny

Judgment Creditors' Motion to Disgorge the fees and costs previously paid to Judgment

Creditors.

Trustee is ordered to lodge proposed final judgments or orders consistent with

1  these findings of fact and conclusions of law within 14 days of entry of these findings of

2  fact and conclusions of law.

3          IT IS SO ORDERED.

4                                              ###

Date: May 7, 2015

Robert Kwan
United States Bankruptcy Judge